34

**J. PEDRO ZARATE**
8192 Creek Estates Way
Sacramento, CA 95829

Telephone: (916) 525-1257

Attorney *In Pro Per*

FILED

APR 2 5 2014

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT,

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| In re, | Case No. 13-22346-C7 |
| J. Pedro Zarate, | **DEBTOR'S OBJECTION TO PROOF OF CLAIM SUBMITTED BY BANK OF NEW YORK MELLON.** |
| Debtor. | |
| | DCN:  JPZ-002 |
| | Date: May, 27, 2014 |
| | Dept: C |
| | Time: 9:30 am |
| | Crtrm: 35, 6th Floor |
| | Judge: Hon. Chief Judge |
| | Christopher M. Klein |

-i-

**Table of Contents**

Page(s)

I.
INTRODUCTION............................................................................................1

    A.    To Uphold and Maintain the Integrity of the Courts
          and the  Judicial System, Exact and Concrete Evidence
          is Required to Show That the Claimant is a Party With
          Standing to Make the Proof of Claim...............................................1

  II. BACKGROUND.........................................................................................4

III.  CLAIMANT'S EXHIBITS.........................................................................6

IV.  NARRATIVE  SUMMARY OF CREDITOR'S CLAIM AND EXHIBITS.......................6

V.  DISCUSSION...............................................................................................7

    A.    The Claimant Has Failed to Present Evidence
          Sufficient to Prove It Has a Perfected a Security
          Interest in the Debtor's Property as Required by
          FRBP, Rule 3001(d)...........................................................................7

B.  Code Requirements.......................................................................................8

        1.    As Required  by 11 U.S.C. § 501(a), the
              Claimant Cannot Show That It is a Creditor
              as Defined by 11 U.S.C. § 101(10) Entitled
              to Make a Claim Against the Debtor's Estate,
              and the Claim Must be Denied.........................................................8

        2.    Because the Claimant Cannot Show It Has
              Legal Authority to Make the Claim, the Claim
              Is Unenforceable Against the Debtor Pursuant
              to  11 U.S.C. § 502(b)......................................................................10

VI.  STANDING.................................................................................................10

    A.  Pursuant to the California Commercial Code ("CCC") and
        the Uniform Commercial Code ("UCC"), Claimant Has

Failed to Establish an Unbroken Chain of Title That
Establishes Constitutional Standing, and Prudential Standing,
and It Cannot Show Colorable Claim of Title to the Property.............................10

B.  The Issue of Whether the Claimant Has Obtained Standing
to Make this Proof of Claim Is Moot Because the Stated
Purpose Underlying the Motion Is to Foreclose on Debtor's
Property, and the Claimant Cannot Show Standing to Foreclose.
*See* "Basis for Asserting the Applicable Party has the Right to
foreclose:" attached as an Exhibit to Claimant's Proof of Claim..................15, 16

C.  Because the Deed of Trust Attaches to the Note, the June 17,
2010, Purported "Assignment" Was Redundant, Null and
Void, and Claimant must Find Another Means to Establish
Standing.........................................................................................19

VII.  THE SECURITIZATION ISSUE .............................................................20

A.  Because the Note and Deed of Trust Were Not "Securitized" by
True Sale "Assignments"or Endorsements Establishing a Chain
of Title from the "Lender/ Originator" to the "Seller/Aggregator"
to the "Depositor" to the  PSA Trust Pursuant to IRC §§ 860A-G,
the PSA Trustee Does Not Own or Have a Stake in the Note and
Deed of Trust, and, Therefore, Movant Cannot Otherwise Establish
That it is a Party in Interest with Authority to Make this Proof of
Claim................................................................................................20

VIII.  CONCLUSION.............................................................................25

-o0o-

## Table of Authorities

Cases:                                                                       Page(
                                                                               s)

*Adler v. Sargent,*
109 Cal. 42, 49-50 (1895) ......................................................................18, 20

*Barrionuevo v. Chase Bank, NA,*
885 F. Supp. 2d 964 (2012) ...............................................................17, 19, 24, 25

*Candelo v. NDex W., LLC,* 2
008 WL 5382259, at *4 (E.D. Cal. Dec. 23, 2008)..............................................18

*Carpenter v. Longan,*
83 U.S. 271, 274 (1872) ..........................................................................9, 18, 19

*Castaneda v. Saxon Mortg. Servs., Inc.,*
687 F. Supp. 2d 1191, 1201 (E.D. Cal. 2009)..........................................17, 18

*Commercial Prods. Corp. v. Briegel,*
242 N.E.2d 317, 321 (Ill. App. Ct. 1968)....................................................13

*County of Kern,*
581 F.3d 841, 845 (9th Cir. 2009)................................................................12

*Doran v. 7-Eleven, Inc.,*
524 F.3d 1034, 1044 (9th Cir. 2008)............................................................12

*Elk Grove v. Newdow*
542 U.S. 1, 11 (2004)....................................................................................12

*Gardner v. Am. Home Mortg. Servicing, Inc.,*
691 F. Supp. 2d 1192, 1202 (E.D. Cal. 2010).............................................17

*Gomes v. Countrywide Home Loans, Inc.*
(2011) 192 Cal.App.4th 1149, 1155, 121 Cal.Rptr.3d 819.......................16

*Gran v. Internal Revenue Serv. (In re Gran),*
964 F.2d 822, 827 (8th Cir. 1992))................................................................8

*Henley v. Hotaling,*
41 Cal. 22, 28 (1871)....................................................................................18

*In re Allegheny Int'l, Inc.,*
954 F.2d 167, 173-74 (3rd Cir.1992)..............................................................8

*In re BNT Terminals, Inc.,*
125 B.R. 963, 970 (Bankr. N.D. Ill. 1990)...................................................13

*In re Cedano,*
470 BR 522  (9th Circuit, BAP 20.......................................................16, 17, 19

*In re Consumers Realty & Development Co., Inc.,*

-iv-

238 B.R. 418, 422-423 (B.A.P. 8th Cir. 1999)..................................................8

*In re Foreclosure Cases,*
521 F.Supp2d 650, 653 (S.D. Ohio 2007) ..................................................2, 20

*In re Harrison,*
987 F.2d 677, 680 (10th Cir.1993)..................................................8

*In re Hwang,*
438 B.R. 661, 665 (C.D. Cal. 2010)..................................................15

*In re Jackson,*
241 B.R. 24 (Cal. E.D. 2011)..................................................11

*In re Koontz,*
2010 WL 5625883, 7-8 (Bankr. N.D. Ind. 2010)..................................................7, 8

*In re Sobczak,*
(9th Cir. BAP 2007) 369 BR 512, 517-518 ..................................................9

*In re Vanhook,*
426 B.R. 296, 298-99 (Bankr. N.D. Ill. 2010)..................................................8

*In re Vargas,*
396 B.R. 511, (Bankr. C.D. Cal. 2008) ..................................................20

*In re Veal,*
450 B.R. 897 (9th Cir. 2011)..................................................11, 12, 13, 14, 15, 17

*Krueger v. Dorr,*
161 N.E.2d 433, 440-41 (Ill. App. Ct. 1959)..................................................13

*Landmark Nat'l Bank v. Kesler,*
216 P.3d 158 (Kan.
2009)..................................................20

*Lane v. Vitek Real Estate Indus. Grp.,*
713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010)..................................................18

*LaSalle Bank v. Lamy,*
824 N.Y.S.2d 769 (2006)..................................................20

*Lona v. Citibank*
202 Cal.App.4th 89 (2011)..................................................17

*Lundy v. Messer,*

167 N.E.2d 278, 279 (Ill. App. Ct. 1960)........................................................13

*Moeller v. Lien,*
25 Cal. App. 4th 822, 834 (Cal. Ct. App. 1994)........................................17

*Moore v. Lewis,*
366 N.E.2d 594, 599 (Ill. App. Ct. 1977)........................................13

*Padayachi v. IndyMac Bank,*
2010 WL 4367221, at *3 (N.D. Cal. Oct. 28, 2010)........................................17

*Seidell v. Tuxedo Land Co.,* (1932)
216 Cal.165, 170 ........................................................18, 19

*Sprint Communication Co. v. APCC Services, Inc.*
554 U.S. 269 (2008)........................................................11

*Valley Forge Christian Coll. v. Am. United for Separation of Church and State,*
454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)........................................11

**FEDERAL STATUTES**

11 U.S.C. § 501(a)........................................................8, 10

11 U.S.C. § 502(a)........................................................7

11 U.S.C. § 502(b)........................................................8, 10

11 U.S.C. § 502(b)(1)........................................................10

11 U.S.C § 101(10)........................................................8, 9

26 U.S.C. § 860........................................................24

26 U.S.C. § 860A - G........................................................3, 20

26 U.S.C. § 860D........................................................22

26 U.S.C. § 860G(a)(3)(A)........................................................22

26 U.S.C. § 860G(a)(3)(A)(i)........................................................22, 23

26 U.S.C. § 860G(a)(3)(A)(ii)..................................................................22

Uniform Commercial Code § 3-301.......................................................13
Uniform Commercial Code § 3-102.......................................................13

**FEDERAL RULES**

Federal Rules of Bankruptcy Procedure, Rule 3001(a)-(c) ...................8

Federal Rules of Bankruptcy Procedure, Rule 3001(d)..........................7

Federal Rules of Bankruptcy Procedure, Rule 3001(f)...........................7

Federal Rules of Civil Procedure, Rule 17(a)(1)..................................12

**CALIFORNIA STATE STATUTES**

California Civil Code § 2924 ...........................................4, 16, 17, 19

California Civil Code § 2924(a)(1).............................3, 16, 18, 19, 24

California Civil Code § 2936.............................................18, 19

California Commercial Code  § 1201(b)(21)(A).........................13, 18

California Commerce Code § 3203........................................14

California Commerce Code § 3203(a) ...................................14

California Commerce Code § 3203(b).....................................14

California Commerce Code § 3301.........................................17

California Commerce Code § 3301(i).......................................13

California Commerce Code § 3301(ii)......................................13

California Commerce Code § 9109(a)(3).....................................14

**U.S. CONSTITUTION**

Article III ................................................................................................2,11

**ARIZONA STATE STATUTES**

Arizona Commercial Code.........................................................................12

New York  Estates, Powers & Trusts Law section 7-2.4...................................23

**SECONDARY AUTHORITIES**

4 Witkin Summary of California Law,
Secured Transaction in Real Property § 105 (10th ed)...............................9, 18, 19

(2012) 41 Stetson L.Rev. 745.................................................................2, 26

-viii-

**DEBTOR'S OBJECTION TO THE PROOF OF CLAIM**

**FILED ON MAY 17, 2013, CLAIM NUMBER 6-1 PART 2, SUBMITTED BY THE**

**BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE**

**FOR THE CERTIFICATE HOLDERS OF THE CWALT, INC., ALTERNATIVE**

**LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES**

**2006-OA10**

## I. INTRODUCTION

COMES NOW, J. PEDRO ZÀRATE, Debtor, and files this Objection to Allowance of Proof of Claim  as filed by Creditor THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10  ("Claimant").

**A.      To Uphold and Maintain the Integrity of the Courts and the  Judicial System, Exact and Concrete Evidence is Required to Show That the Claimant is a Party With Standing to Make the Proof of Claim.**

Without adequate proof that the Claimant is the proper lawful party entitled to receive payment, it becomes a guessing game whether the Debtor/Borrower has received or will receive credit for his Promissory Note payments. To date the Claimant has not shown credible and lawful proof of its right to receive payment.

The presumption by  the courts that the banks have acted lawfully and make lawful allegations of authority when it submits a Proof of Claim can no longer obtain. Support for the banks when the banks make unsupported claims in their attempts to enforce the Notes and Deeds

of Trust without evidence to show they are legally entitled must end.[1]

Basic precepts of law and equity dictate that only the party who is legally entitled to contractual consideration be allowed to collect on the obligation to the tender consideration or to enforce contractual obligations. No less than Article III of the Constitution of the United States requires that there be a "case or controversy" between parties, that the enforcement of contractual obligations must be by one who has a "stake" in the outcome. If this elemental principle of law and fairness, this elemental principle of "standing" is not observed by the courts, the integrity of our judicial system becomes severely challenged and diminished. It was written:

This Court acknowledges the right of banks, holding valid mortgages, to receive timely payments. And, if they do not receive timely payments, banks have the right to properly file actions on the defaulted notes—seeking foreclosure on the property securing the notes. Yet, this Court possesses the independent obligations to preserve the judicial integrity of the federal court and to jealously guard federal jurisdiction. Neither the fluidity of the secondary mortgage market, nor monetary or economic consideration of the parties, nor the convenience of the litigants supersedes those obligations . . . [u]nlike . . . [s]tate law and procedure, as [p]laintiffs perceive it, the federal judicial system need not, and will not, be "forgiving in this regard." *In re Foreclosure Cases,* 521 F. Supp. 2d 650, 653 (S.D. Oh. 2007) (Emphasis added by Debtor.) (*See* (2012) 41 Stetson L.Rev. 745)

Debtor understands the foreclosure efforts of a true "beneficiary" or its legitimate agent(s) and/or "successors in interest", but he would be foolish to support the efforts of this Claimant until such time this Claimant is able to satisfactorily prove its authority, Due Process and Standing to collect on the debt.

Because of the actions of lender and the lenders' agents and successors in interest, and the confusion left in the wake of these parties' rush to profit through "securitization", the banks in the secondary market have failed to specifically comply with the unbroken "chain of title"

---

[1] (2012) 41 Stetson L.Rev. 745 (Exhibit H.)

requirement and the requirements of the Internal Revenue Code §§ 860A-G, the law that allows securitization when its provisions are strictly complied with. The plan of the Internal Revenue Code to create and implement securitization requires that the process be punctiliously adhered to or there is no securitization. The process itself defines securitization. Partial compliance of the process of securitization leaves nothing. Securitization does not exist as the process is securitization. Full compliance with the process of securitization produces securitization. Partial compliance with the process gives you nothing.

Further, this doctrine of full compliance applies equally to standing found in the specific applications of the Uniform Commercial Code and California Civil Code § 2924(a)(1), *et seq.* Any application of the rule of standing in applying real property law and equity requires an unbroken chain whether such chain is found in the "Grantee-Grantor" index to show chain of ownership or in its application here to show chain of title. If the chain is broken, as is the issue herein, it leaves the borrower to doubt whether the Claimant is the party with standing authority. If no unbroken chain is found, it casts doubt as to whom the borrower is to pay or to whom he has paid and whether such payments were properly applied to the Promissory Note.

As shown below, the banks' misfeasance to comport action to law in the alleged and purported transfers and "assignments" of the Promissory Note, has left the Debtor in doubt as to whom consideration should be paid as required by the Promissory Note.

The Debtor requests that before the Court allows the Claimant's claim herein, it acknowledge the basic principle of law and require the Claimant to sufficiently show that it has a stake in the controversy, that it has authority, standing, and followed de rules and procedures to make its claim against the Debtor's estate.

Debtor alleges that the Claimant's Proof of Claim is deficient to prove its authority to make the claim, because it cannot show an unbroken chain of title. Below the Debtor will show either by way of common law principles, the Uniform Commercial Code, California Civil Code §§ 2924, *et seq.,* and the Internal Revenue Code, that Claimant has failed to show that it is the party with a legal right to make claim against the Debtor's estate. Debtor herein claims and alleges that he owes nothing to this Claimant.

## II. BACKGROUND

The following time sequence of relevant events may be helpful for a clear understanding of the status of the parties and the mortgage herein:

- **February 2, 2006**: The Note, and Deed , were executed and the Deed was recorded on February 14, 2006. The lender was Countrywide Bank, N.A.,("Countrywide),  and CTC  Foreclosure Services Corporation ("CTC") was named the trustee.  Further, the Deed showed that though the lender was Countrywide, it named MERS as the nominee/ beneficiary. The loan consisted of a fully amortized thirty (30) year adjustable rate note  ("ARM") in the amount of $595,000.00. (Please see Note attached as Exhibit A, and Deed of Trust attached as Exhibit B.)

- **June 1, 2006. The Pooling and Servicing Agreement ("PSA")** (Exhibit D) was signed completing the securitization of the PSA comprised of Notes and Deeds of Trusts and Mortgages of which the Debtor's Note and Deed was allegedly a part. (Exhibits A and B) The Lender was Countrywide Bank, N.A., the Sellers were Countrywide Home Loans, Inc., Park Granada,  LLC, Park Monaco Inc., and Park Sienna LLC. The Depositor was CWALT, Inc., and the Master Servicer was Countrywide Home Loans Servicing LP, Bank

of New York was named the Trustee.

- **June 3, 2008, Notice of Default.** This notice was filed with the county recorder's office on June 4, 2008. MERS was the named beneficiary, and CTC was shown as the Trustee. ReconTrust Company ("ReconTrust") was named the agent for the beneficiary. The document was actually signed by an agent of LandSafe Title Corp., as ReconTrust's Attorney in Fact. (Please see Notice of Default attached as Exhibit E.)

- **June 17, 2010:   Substitution of Trustee and Assignment of Deed of Trust ("Assignment"). (Exhibit C)** One instrument included both the substitution of the trustee and the purported "Assignment" of the Deed. This document was recorded on June 22, 2010. MERS, in its capacity as the "beneficiary" caused the substitution of ReconTrust as the new trustee of the Deed replacing CTC, and purportedly "assigned" the Deed to the Claimant Trustee of the PSA Trust. (Exhibit D.)

- **Undated Notice of Trustee's Sale.** Recorded on June 22, 2010. This instrument was signed by an agent of ReconTrust. The named beneficiary was Bank of New York as Trustee for the Certificate Holders CWALT, Inc. Alternative Loan Trust 2006-OA10 Mortgage Pass-Through Certificates, Series 2006-OA. The sales date was stated as July 14, 2010. (Please see Notice of Trustee's Sale attached as Exhibit F.)

- **August 1, 2011, Notice of Trustee's Sale.** Recorded on August 3, 2011. This instrument was signed by an agent of ReconTrust. The named beneficiary was Bank of New York as Trustee for the Certificate Holders CWALT, Inc. Alternative Loan Trust 2006-OA10 Mortgage Pass-Through Certificates, Series 2006-OA. The sales date was stated as August 26, 2011. (Please see Notice of Trustee's Sale attached as Exhibit G.)

## III.  CLAIMANT'S EXHIBITS

Claimant attached the following attachments in support of its alleged right to make claim on the secured real property of the Debtor:

### MORTGAGE PROOF OF CLAIM ATTACHMENT

Part 1: Statement of Principal and Interest Due as of the Petition Date

Part 2: Statement of Prepetition Fees, Expenses, and Charges

Part 3: Statement of Amount Necessary to Cure Default as of the Petition Date

### ATTACHMENT DOCUMENTS:

Exhibit 1:     Bank of America Home Loans Escrow Account Review

Exhibit 2:     Adjustable Rate Note (with Prepayment Penalty Addendum)

Exhibit 3:     Deed of Trust (with Adjustable Rate Rider)

Exhibit 4:     SUBSTITUTION OF TRUSTEE AND ASSIGNMENT OF DEED OF TRUST

## IV.  NARRATIVE SUMMARY OF CREDITOR'S CLAIM AND EXHIBITS

The Proof of Claim alleges it is a claim for "money loaned" and that it is secured in the claim amount of $817,514.26, by real estate described as 10826 Walmort Road, Wilton, California Though Claimant fails to explain the inclusion of the "Substitution of Trustee and Assignment of Deed of Trust" ("Assignment") (please see  Substitution of Trustee and Assignment of Deed of Trust attached as Exhibit B) as proof of right to make claim, it apparently makes claim through the purported "assignment" of the Deed of Trust purportedly "assigning" the Deed of Trust to Mortgage Electronic Registration Services, Inc. ("MERS") (please see Deed of Trust attached as Exhibit B)  and the follow-up purported "assignment"

of the Deed of Trust from MERS to Claimant. (Exhibit E). In all likelihood, this makes sense only because of an attempt to make the Adjustable Rate Note ("Note") (please see Note attached as Exhibit A) a part of the *corpus* of an June 1, 2006, trust entitled "ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10" ("PSA Trust") created by a pooling and servicing agreement ("PSA"). This purported "assignment" does not assign or otherwise transfer the Note, and hence does not in any manner assign or transfer the creditor status or rightful claimant status to Claimant. The documentation provided by Claimant with its claim provides absolutely no evidence it is the creditor or rightful claimant entitled to make claim against the Property.

## V. DISCUSSION

**A.     The Claimant Has Failed to Present Evidence Sufficient to Prove It Has a Perfected a Security Interest in the Debtor's Property as Required by FRBP, Rule 3001(d).**

A filed proof of claim is *prima facie* evidence of its validity and amount if it is executed and filed in accordance with the Federal Rules of Bankruptcy Procedure. FRBP, Rule 3001(f). FRBP, Rule 3001(a)-(c) provides that a proof of claim must be in writing, be executed by the creditor or its authorized agent, and, when based on a writing, be filed with the original or a duplicate of that writing. FRBP, Rule 3001(a)-(c). If the creditor claims a security interest in the Debtor's property FRBP, Rule 3001(d) requires: "the proof of claim shall be accompanied by evidence that the security interest has been perfected.". In the instant case we have an attorney without a Power of Attorney signing the proof of claim on behalf of the creditor with out checking any of the boxes to identify his authority, (Please see Registry Claim 6-1 Part 2 Proof

-7-

of Claim. as Exhibit I)  Further, pursuant to 11 U.S.C. § 502(a), a claim "is deemed allowed, unless a party in interest . . objects."

"'Claim objectors carry the initial burden to produce some evidence to overcome the rebuttable presumption of validity.'" *In re Koontz*, 2010 WL 5625883, 7-8 (Bankr. N.D. Ind. 2010) (quoting *In re Vanhook*, 426 B.R. 296, 298-99 (Bankr. N.D. Ill. 2010) (citations omitted)). *See also In re Consumers Realty & Development Co., Inc.*, 238 B.R. 418, 422-423 (B.A.P. 8th Cir. 1999) (citing *Gran v. Internal Revenue Serv. (In re Gran)*, 964 F.2d 822, 827 (8th Cir. 1992)). "Once the objecting party produces evidence rebutting the claim, the burden of proof shifts to the claimant to produce evidence establishing the validity of the claim. *In re Gran. Id.*  Thus, once an objection is made to the proof of claim, the ultimate burden of persuasion as to the claim's validity and amount rests with the claimant." *In re Consumers Realty & Development Co., Inc.*, supra, at 423 (citing *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3rd Cir.1992); *In re Harrison*, 987 F.2d 677, 680 (10th Cir.1993)).

**B.     Code Requirements**

**1.     As Required by 11 U.S.C. § 501(a), the Claimant Cannot Show That It is a Creditor as Defined by 11 U.S.C. § 101(10) Entitled to Make a Claim Against the Debtor's Estate, and the Claim Must be Denied.**

A creditor or an indenture trustee may file a proof of claim. An equity holder may file a  proof of interest.

11 U.S.C. §501(a) states:

(a) A creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest.

11 U.S.C. § 502(b) lists the allowable objections. However, it must be determined whether

-8-

1  Claimant is a "creditor", as defined by code to be a proper party to make any claims at all.

2       Debtor contends that Claimant has not shown in it Proof of Claim that it is a "creditor"

3  as defined by code and consideration of the claim should be precluded by a determination that the

4  Claimant is <u>not</u> a "creditor".

5

6       A "creditor" is "an entity that has a claim against the Debtor that arose at the time of or

7  before the order for relief concerning the Debtor." 11 U.S.C § 101(10). A "claim" is a right to

8  payment or an equitable remedy, whether or not such right is contingent. *See* 11 U.S.C § 101(5).

9       The Claimant's Proof of Claim herein does not produce the necessary evidence through

10 its attached documents to show that the Claimant is a 11 U.S.C § 101(10) "creditor" . The

11 attachments, the "Mortgage Proof of Claim Attachment", the "Escrow Account Review", the

12 "Adjustable Rate Note" ("Note") and "Prepayment Penalty Addendum", the "Deed of Trust"

13 ("Deed") with "Adjustable Rate Rider", and the "Substitution of Trustee and Assignment of Deed

14 of Trust", do not evidence that the Debtor owes Claimant anything.

15      This documentation only describes that there existed an alleged "Assignment" (Exhibit

16 C) of the Deed from MERS to Claimant (a nullity, in that an "assignment" of a Deed alone is

17 void, as argued below, *See Carpenter v. Longan*, 83 U.S. 271, 274 (1872)). Claimant has

18 failed to present evidence showing that it is the owner, holder , or possessor of the Note., The

19 failure to attach documents which go to the heart of the defect in the claim, as well as the

20 presence/inclusion of attached documents that themselves amount to evidence of the claim's

21 defect, will provide reason to disallow the claim. 4 Witkin Summary of California Law,

22 Secured Transaction in Real Property § 105 (10th ed). Succinctly, a claimant must show it has

23 a "pecuniary interest" in the underlying debt that gives rise to the claim in order to establish

24

25

26

27

28                                    -9-

that the claimant is a "creditor". *See In re Sobczak*, (9ᵗʰ Cir. BAP 2007) 369 BR 512, 517-518.

After consideration of "V. STANDING", below, Claimant requests that Claimant's Proof of Claim be disallowed for failure to show that it is a "creditor" with a "pecuniary interest".

**2. Because the Claimant Cannot Show It Has Legal Authority to Make the Claim, the Claim Is Unenforceable Against the Debtor Pursuant to 11 U.S.C. § 502(b).**

11 U.S.C. 502(b) sets forth the objections to the Proof of Claim allowed to the Debtor.

Notwithstanding "1", above, if the Court determines that Claimant *is* a creditor, then Debtor makes the following arguments pursuant to 11 U.S.C. 502(b):

Debtor objects to the Proof of Claim pursuant to 11 U.S.C. 502(b)(1). It states:

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the Debtor and property of the Debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

Debtor contends that if Claimant is determined by this Court to be a "creditor" under 11 U.S.C. §501(a), its claim is nevertheless "unenforceable against the Debtor". This contention is based on the Debtor's assertion that Claimant has not shown that it has established or now maintains lawful authority to make the claim under federal or state law, and therefore, the claim is unenforceable pursuant to 11 U.S.C. 502(b)(1).(*See* **VI. STANDING**, below.)

### VI. STANDING

**A.     Pursuant to the California Commercial Code ("CCC") and the Uniform Commercial Code ("UCC"), Claimant Has Failed to Establish an Unbroken Chain of Title That Establishes Constitutional Standing, and Prudential Standing, and It Cannot Show**

**Colorable Claim of Title to the Property.**

California has adopted the Federal Uniform Commercial Code.

As its first inquiry to determine a party's standing in the UCC context, the Court must determine whether the party has constitutional standing, i.e., whether the party satisfies the "case or controversy" requirement of Article III. *In re Jackson* 241 BR 21 (Bankr. E.D. Cal. 2011). When a claimant fails to demonstrate it has any ownership interest or legal title to the claim being asserted, the claimant fails to establish it has constitutional standing to bring the claim. *See Sprint Communication Co. v. APCC Services, Inc.* 554 U.S. 269 (2008).

At a minimum, constitutional standing requires the Claimant to have suffered some actual or threatened injury as a result of the Debtor's conduct, that the injury be traced to the challenged action, and that it is likely to be redressed by a favorable decision. *Valley Forge Christian Coll. v. Am.United for Separation of Church and State,* 454 U.S. 464, 472, (1982) [citations and internal quotations omitted].

The Note was made payable to Countrywide Bank, N.A. (Countrywide). No record document suggests that it has been indorsed to Claimant or any other named entity. The Deed of Trust states that  Countrywide is the beneficiary of the Deed. No record document suggests that Countrywide transferred its beneficial interest to Claimant. The record shows that Countrywide "assigned" the Deed to MERS without assigning the Note. This is insufficient. The Claimant has presented no other documentary evidence to show that Claimant has suffered some actual or threatened injury as a result of Debtor's conduct

The Ninth Circuit Court of Appeals' decision, In re Veal, [450 B.R. 897 (2011) (9th Cir. BAP June 10, 2011)] ("*Veal*") stated that a federal court may exercise jurisdiction over

1  a litigant only when that litigant meets constitutional *and* prudential standing requirements.

2      Prudential standing "'embodies judicially self-imposed limits on the exercise of federal

3  jurisdiction.'" *Id.* at p. 906, (quoting *Elk Grove v. Newdow* 542 U.S. 1, 11 (2004)); *County of*

4
5  *Kern*, 581 F.3d 841, 845 (9th Cir. 2009). The Court in *Veal* described that prudential standing

6  principles ". . . generally provide that a party without the legal right, under applicable substantive

7  law, to enforce an obligation or seek a remedy with respect to it is not a real party in interest. *Id.*

8  at p. 907, citing *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1044 (9th Cir. 2008).

9      The facts in the *Veal* case show that a foreclosure sale had not yet occurred, and Wells

10
11  Fargo, the trustee of a pooling trust which contained the note, was seeking relief from stay to

12  conduct a non-judicial foreclosure sale of the property. The *Veal* Court approached the issue of

13  the requirements to obtain standing of a Movant who wished relief from the automatic stay. The

14  Court overruled the bankruptcy court's ruling which lifted the stay as it applied to Wells Fargo.

15      It is the Debtor's contention that Claimant has failed to satisfy the prudential standing

16  requirement, and, for that reason is unable to enforce its claim in federal court or state court

17
18  whether enforcement is sought through proofs of claim or causes of action.

19      The applicable substantive law begins with the Federal Rules of Civil Procedure, Rule

20  17(a)(1) which states:

21          "An action must be prosecuted in the name of the real party in interest."

22      The *Veal* Court stated that in order to properly apply Rule 17(a)(1), it is necessary to

23  refer to Articles 3 and 9 of the Arizona Commercial Code[2] as the law to be applied to

24  determine whether the Movant is a real party in interest and meets the appropriate prudential

25

26  _____

27      [2] Arizona has adopted the Uniform Commercial Code as has California.

28                          -12-

standing requirement. Article 3 provides a comprehensive set of rules governing the obligations of parties on the Note, including how to determine who may enforce those obligations and to whom those obligations are owed. *See* UCC § 3-102.

Though it is axiomatic that any attempt to assign the mortgage without the debt will not pass the mortgagee's interest to the assignee. *In re Veal,* supra,  at p. 916; *In re BNT Terminals, Inc.*, 125 B.R. 963, 970 (Bankr. N.D. Ill. 1990), citing *Krueger v. Dorr,* 161 N.E.2d 433, 440-41 (Ill. App. Ct. 1959); *Moore v. Lewis,* 366 N.E.2d 594, 599 (Ill. App. Ct. 1977); *Commercial Prods. Corp. v. Briegel,* 242 N.E.2d 317, 321 (Ill. App. Ct. 1968); and *Lundy v. Messer,* 167 N.E.2d 278, 279 (Ill. App. Ct. 1960).

Article 3 states that the ability to enforce a particular note is held by the "person entitled to enforce" the note. It does not necessarily equate the proper person to be paid with the person who *owns* the negotiable instrument. *Id.* at p. 909; UCC § 3-301. Nevertheless, there are at least two ways in which a person can acquire "person entitled to enforce" status.

The first way requires that the person must be the "holder" of the Note. CCC § 3301(i). A person is a holder if he possesses the note and either (1) the note has been made payable to the person who has it in his possession, or (2) the note has been made payable to the bearer of the note. CCC § 1201(b)(21)(A).  This determination requires physical examination not only of the face of the note but also of any endorsements. *In re Veal,* supra, at p. 911.

A second way involves the party attaining the status of a non-holder in possession of the Note who has the rights of a holder. CCC § 3301(ii). *In re Veal,* supra, at p. 911.

Generally, a person becomes a non-holder in possession if the physical delivery of the note to that person constitutes a *"transfer"* but not a *"negotiation."* Under the UCC, a "transfer"

-13-

of a negotiable instrument "vests in the transferee any right of the transferor to enforce the instrument." CCC § 3203(b). *In re Veal,* supra, at p. 911.

If a holder *transfers* the note to another person by a process not involving an Article 3 negotiation, e.g., a sale of notes in bulk without individual endorsement of each note – the transferee obtains from the holder the right to enforce the note even if no negotiation takes place and, thus, the transferee does not become an Article 3 "holder." (But still in possession of the Note.) See Comment 1 to CCC § 3203.

CCC § 3203(a) offers a definition of "transfer". It states that a note is transferred "when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." *In re Veal,* supra, at p. 911.

As a consequence, the failure to obtain the endorsement of the payee or other holder does not prevent a person in possession of the note from being the "person entitled to enforce" the note. However, without holder status and the attendant presumption of a right to enforce, the possessor of the note must demonstrate both (1) the fact of the delivery and (2) the purpose of the delivery of the note to the transferee in order to qualify as the "person entitled to enforce." *In re Veal,* supra, at p. 911.

If that owner/payee seeks either to use the note as collateral or sell the note outright to a third party in a manner *not* within Article 3, Article 9 of the CCC governs that sale or loan transaction and determines whether the purchaser of the note or creditor of the payee obtains a property interest in the note. See CCC § 9109(a)(3). *In re Veal,* supra, at p. 913.

In the *Veal* case, the Court found that two assignments of the Note were insufficient. Neither assignment was authenticated and one was not indorsed nor did it contain language

1    effectuating an assignment. The Court found that the second purported assignment was

2    insufficient under Article 9 to support a conclusion that the Movant held any interest,

3    ownership or otherwise, in the Note. *In re Veal,* supra, at pp. 917-918.

4        The *Veal* Court stated:

5

6    As a result, to show a colorable claim against the Property, Wells Fargo had to show that it
     had some interest in the Note, either as a holder, as some other "person entitled to enforce," or
7    that it was someone who held some ownership or other interest in the Note. See *In re Hwang,*
     438 B.R. 661, 665 (C.D. Cal. 2010)(finding that holder of note has real party in interest
8    status). *In re Veal,* supra, at p. 920.

9        In the instant case, none of the exhibits attached to the Claimant's Proof of Claim,

10   establish its status as the holder of the Note, as a "person entitled to enforce," or as an entity

11   with any ownership or other "colorable" interest in the Note. Further, the Claimant has failed

12

13   to submit evidence that the Note was endorsed to the Claimant or that  it filed any kind of

14   action to enforce endorsement.

15       Further, the Proof of Claim submits  no evidentiary proof to show that (1) Claimant

16   services the loan, (2) Claimant is a note holder in possession of the (original) promissory note,

17

18   (3) the promissory note is "either made payable to the Note holder or has been duly endorsed",

19   (4) Claimant is the note holder of the original mortgagee of the beneficiary or the assignee of

20   the Deed.

21       For the foregoing reasons, pursuant to the California Commercial Code, the Federal

22   Rules of Civil Procedure, and the Uniform Commercial Code, the Claimant has failed to

23

24   demonstrate it is a party in interest with standing to make its Claim.

25   **B.    The Issue of Whether the Claimant Has Obtained Standing to Make this**

26   **Proof of Claim Is Moot Because the Stated Purpose Underlying the Motion Is to**

27

28                                              -15-

1  **Foreclose on Debtor's Property, and the Claimant Cannot Show Standing to Foreclose.**

2  *See* **"Basis for Asserting the Applicable Party has the Right to foreclose:" attached as an**

3  **Exhibit to Claimant's Proof of Claim.**

4
5  Because the purported "Assignment" has not established an unbroken chain of title,

6  Claimant cannot show that it is a "trustee, mortgagee, or beneficiary, or any of their authorized

7  agents" required by California Civil Code ("CC") § 2924(a)(1), to allow it to initiate non-

8  judicial foreclosure sale by filing and serving a lawful Notice of Default. Therefore, because

9  Claimant cannot establish standing pursuant to CC § 2924(a)(1), and the requested relief from

10  automatic stay has no purpose, and the Motion for Relief from Automatic Stay is moot.

11
12  In the Ninth Circuit Court's decision in *In re Cedano*, [470 BR 522  (9th Circuit, BAP

13  2012)], it determined  that CC § 2924, *et seq.,* California's non-judicial foreclosure law,

14  totally occupied  the field to the exclusion of the UCC, the CCC, or other federal and State

15  law.    CC § 2924(a)(1) is the legal foundation to the defense that any foreclosing entity

16  causing the Notice of Default to be filed and served <u>must</u> be a "mortgagee, trustee, or

17  beneficiary, or an authorized agent(s)". Any claiming party, not a mortgagee, trustee, or

18
19  beneficiary, or an authorized agent(s), violates the requirements found in CC § 2924(a)(1) and

20  has no standing to initiate the foreclosure proceedings. *See In re Cedano*, supra, 470 BR 522;

21  see also *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1155, 121

22  Cal.Rptr.3d 819.

23
24  CC § 2924(a)(1) states:

25  (1) The trustee, mortgagee, or beneficiary, or any of their
26  authorized agents shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default. . .

27  .

28
-16-

In *Cedano* the Bankruptcy Appellate Panel of the Ninth Circuit Court of Appeals discussed standing of a party to non-judicially foreclose on property under California law.

The *Cedano* court wrote in its opinion:

However, in the context of nonjudicial foreclosure sales, such as here, the Debtor's reliance on Cal. Comm. Code § 3301 is misplaced. *Gardner v. Am. Home Mortg. Servicing, Inc.*, 691 F. Supp. 2d 1192, 1202 (E.D. Cal. 2010); *Padayachi v. IndyMac Bank*, 2010 WL 4367221, at *3 (N.D. Cal. Oct. 28, 2010); *Castaneda v. Saxon Mortg. Servs., Inc.*, 687 F. Supp. 2d 1191, 1201 (E.D. Cal. 2009). Nonjudicial foreclosure sales are governed by Cal. Civ. Code § 2924. *Castaneda*, 687 F. Supp. 2d at 1201; *Moeller v. Lien*, 25 Cal. App. 4th 822, 834 (Cal. Ct. App. 1994); see also *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 917 n.34 (9th Cir. BAP 2011) (noting state law may shape the boundaries of "real party in interest" status and collecting cases where California law gives parties the right to foreclose without interest in the note). California's nonjudicial foreclosure statute provides a "comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." *Lona*, 202 Cal. App. 4th at 101; *Moeller*, 25 Cal. App. 4th at 834 (comprehensive statutory framework intended to be exhaustive).

In order for Claimant to attain the standing of a "beneficiary" under CC § 2924, a "chain of title" must be shown whereby each transferee party attains the status of beneficiary until it transfers and passes the beneficiary status to a new party. These transfers are generally accomplished by assignments, allonges, and/or endorsements. Because there are no allonges or endorsements to Claimant's Promissory Note evidenced in the moving papers, and only one ineffective "Assignment" (Exhibit C) which purportedly "assigns" the Deed of Trust from MERS to Claimant, a legal impossibility, Claimant cannot hold that it has established standing to foreclose. Please see *Barrionuevo v. Chase Bank, NA*, 885 F. Supp. 2d 964 (2012)

It appears that Claimant depends on the purported "Assignment" to establish beneficiary (standing) status. However, this "Assignment" only attempted to "assign" the Deed of Trust, by itself, without the Promissory Note. There was no attempt to "assign" the Promissory Note, and without the "assignment" of the Promissory Note, the Deed of Trust was ineffective to act as a

-17-

security instrument to the Promissory Note and was ineffective to bestow beneficiary status on Claimant. This is because the Note and Deed of Trust are inseparable. The Note is essential. The Deed of Trust is incident to the Note. An assignment of the note carries the mortgage with it while the assignment of the Deed of Trust alone is a nullity. *See Carpenter v. Longan*, 83 U.S. 271, 274 (1872); see also *Henley v. Hotaling*, 41 Cal. 22, 28 (1871); *Seidell v. Tuxedo Land Co.*, 216 Cal. 165, 170 (1932); CC § 2936. When one party is assigned the Note and another is assigned the Deed of Trust, the holder of the Note prevails. (*Adler v. Sargent*, 109 Cal. 42, 49-50 (1895); *see also* 4 Witkin Summary of California Law, Secured Transaction in Real Property § 105 (10th ed.).)

Because this alleged "Assignment" assigned only the Deed of Trust, it was a nullity and did not have the effect of awarding beneficiary status, and thus, failed to establish CC § 2924(a)(1) standing, and Claimant must establish standing by means other than the February 14, 2012, "Assignment" from MERS to Claimant. 1201(b)(21)(A)

Under Cal. Civ. Code § 2924, the party initiating foreclosure proceedings is not required to have a beneficial or economic interest in the note in order to foreclose. *Lane v. Vitek Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010); *Castaneda*, 687 F. Supp. 2d at 1201 (no requirement that person or entity initiating foreclosure has physical possession of the underlying note); *Candelo v. NDex W., LLC*, 2008 WL 5382259, at *4 (E.D. Cal. Dec. 23, 2008) (same). Instead, a "trustee, mortgagee, or beneficiary, or any of their authorized agents" may commence the nonjudicial foreclosure process. Cal. Civ. Code § 2924(a)(1). (*In re Cedano*, supra, at Page 530.)

In order for Claimant to attain the standing of a "beneficiary" under CC § 2924, a "chain

of title" must be shown whereby each transferee party attains the status of beneficiary until it transfers and passes the beneficiary status to a new party. These transfers are generally accomplished by assignments, allonges, and/or endorsements. Because there are no allonges or endorsements evidenced in the Proof of Claim, and only one ineffective "assignment of a deed of trust" (Exhibit C) which purportedly "assigns" the Deed of Trust from MERS to Claimant, a legal impossibility, Claimant cannot hold that it has established standing. Please see *Barrionuevo v. Chase Bank, NA*, 885 F. Supp. 2d 964 (N.D.Cal. 2012)

**C.    Because the Deed of Trust Attaches to the Note, the June 17, 2010, Purported "Assignment" Was Redundant, Null and Void, and Claimant must Find Another Means to Establish Standing.**

As discussed above, Claimant apparently wishes to claim standing as a successor in interest to the Note and Deed of Trust by way of the purported June 18, 2010, "Assignment" from MERS to Claimant. This purported "Assignment" becomes relevant when Claimant asserts it as the basis for standing to initiate foreclosure proceedings.

As noted above, it is well established law that the assignment of a trust deed does not assign the underlying promissory note and the right to be paid. The security interest is incident of the debt. 4 Witkin Summary of California Law, Secured Transaction in Real Property § 105 (10th ed). The Note and the Deed of Trust are inseparable. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." *Carpenter v. Longan,* supra, at p. 274; *Seidell v. Tuxedo Land Co.,* supra, at p. 170; California Civil Code § 2936. Therefore, if one party receives the Note and another receives the Deed of Trust, the holder of the Note prevails regardless of the order in which the interests were transferred. *Adler v. Sargent,* supra,

-19-

at pp. 49-50 (1895). *See also In re Foreclosure Cases,* 521 F.Supp2d 650, 653 (S.D. Ohio 2007);

*In re Vargas*, 396 B.R. 511, 520 (Bankr. C.D. Cal. 2008); *Landmark Nat'l Bank v. Kesler*, 216

P.3d 158 (Kan. 2009); *LaSalle Bank v. Lamy*, 824 N.Y.S.2d 769 (2006).

Because MERS purportedly "assigned" the Deed only, the purported "Assignment" to

transfer the Deed of Trust was a nullity and void. Further, though MERS, as the <u>beneficiary</u> makes

the purported "Assignment" without the Note, such purported "assignment" was redundant since

the Note, as a matter of law, carries with it the Deed of Trust without the necessity of an

"assignment".

### VII. THE SECURITIZATION ISSUE

**A.    Because the Note and Deed of Trust Were Not "Securitized" by True Sale "Assignments" or Endorsements Establishing a Chain of Title from the "Lender/ Originator" to the "Seller/Aggregator" to the "Depositor" to the PSA Trust Pursuant to IRC §§ 860A-G, the PSA Trustee Does Not Own or Have a Stake in the Note and Deed of Trust, and, Therefore, Movant Cannot Otherwise Establish That it is a Party in Interest with Authority to Make this Proof of Claim.**

Because the purported MERS to Claimant "assignment" (Exhibit C) was ineffective to

confer standing on Claimant, Claimant, in order to make its claim, must find another avenue to

establish it authority. It has not done so. Claimant submits no other documentation to establish

this nexus or "chain of title" that leads the Note and Deed of Trust to the possession of the

Claimant.

Upon information and belief, Debtor alleges that the Note and Deed of Trust were subjects

of a failed securitization attempt to deposit the Note and Deed of Trust in a PSA Trust, and that

the purported October 5, 2010, attempted "assignment" from MERS to Claimant was such a void

attempt to deposit the Deed into the PSA Trust. The Claimant does not evidence in its Claim that

the PSA Trust exists. (Please see PSA Trust attached as Exhibit D.) This PSA Trust was

established on June 1, 2006, pursuant to the terms of the PSA and in compliance with the

Internal Revenue Code, and it lists Countrywide Home Loans Servicing LP as the Master Servicer

of the PSA Trust who was empowered and required by the PSA to conduct foreclosure

proceedings in the event of default in mortgage payments by any one of the thousands of notes

and deeds of trusts and/or mortgages that make up the PSA Trust. *See* PSA Trust at ¶ 3.01.

"Securitization" is only relevant and important when considering the reason underlying

Claimant's failure to mention the PSA Trust in the Proof of Claim. As is described below, had

the securitization of the Note and Deed of Trust been accomplished properly, and all things

claimed being otherwise true, potentially, a "chain of title" could have been established with the

Claimant as the true successor beneficiary with standing to make this Proof of Claim. This did

not happen.

For the Note and Deed of Trust to be included in the *res* of the PSA Trust, a procedure of

sales, transfers, and assignments of the Note must occur. 26 U.S.C. § 860A - G, *et seq*.("IRC").

This process is commonly referred to as "securitization" and these sales, transfers and

assignments, if sufficiently documented, establish a chain of title.

The process of securitization is a process by which Promissory Notes and Mortgages are

bundled or pooled into a trust (PSA Trust) pursuant to a pooling and servicing agreement (PSA).

Residential Mortgage Backed securities (RMBS) in the form of certificates ("Certificates")

representing ownership interests in the Trust are issued for sale to investors ("Investors"). These

RMBS establish in Investors a proportional ownership share of the securitized mortgages of the PSA Trust and its cash flow.

The securitization process requires the loan Originator ("Lender") to sell the note and assign the deed of trust to the Aggregator/Seller in a "true sale" transaction. True sale means that the selling party, for actual valuable consideration, releases all interest in the note and endorses it giving up its power to foreclose under the Deed of Trust. The Seller sells the note and assigns the deed of trust to the "Depositor" in a second true sale transaction, again, transferring all beneficial rights to the note and the rights under the Deed of Trust.

The Depositor sells the note and assigns the deed of trust to the PSA Trust in a true sale transaction. This PSA Trust is known as a REMIC (Real Estate Mortgage Investment Conduit), which is an SPV (Special Purpose Vehicle) that qualifies as a QSPV (Qualified Special Purpose Vehicle) for tax purposes – its earnings are not taxed, but are passed through to the Investors. This process avoids double taxation.(IRC § 860D.) If material non-compliance with the securitization rules are not followed, the REMIC could lose its tax free status.  860G(a)(3)(A)

Because the PSA Trust was created pursuant to the PSA and in compliance with the Internal Revenue Code, Claimant's acts and deeds in furtherance of the foreclosure sale were required to be in compliance with the terms of the PSA, the New York Codes, and the Internal Revenue Code.

To maintain the REMIC status whereby RMBS are allowed to be issued, and where the taxation is "passed through" to the Investors, all qualified mortgages under IRC § 860G(a)(3)(A) must be purchased by the Trust within three (3) months of the PSA Trust startup day (IRC § 860G(a)(3)(A)(i)). A "qualified replacement mortgage" may be purchased to replace

-22-

a defective mortgage within two (2) years of the startup day. (IRC § 860G(a)(3)(A)(ii).)

Further, Debtor is informed and believes and thereon alleges that a term of the PSA Trust explicitly requires transfer of Notes and Mortgages to be completed within ninety (90) days from the PSA Trust startup date. (See PSA § 2.02.)

Because the PSA Trust was formed pursuant to New York law, any transfer or attempted transfer to the PSA Trust in violation of the terms of the PSA is void. New York Estates, Powers & Trusts Law section 7-2.4, provides:

> If the trust is expressed in an instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void."

Debtor is informed and believes and thereon alleges that the PSA Trust startup date was June 6, 2006. This means that pursuant to IRC § 860G(a)(3)(A)(i) and New York Estates, Powers & Trusts Law section 7-2.4, as well as the terms of the PSA, September 6, 2006, would have been the last date to transfer the Note and Deed of Trust herein to the PSA Trust.

Debtor alleges herein that Internal Revenue Code, the New York Estates, Powers & Trusts Law, and the PSA Trust, voids the June 17, 2010, purported "assignment" of Deed of Trust from MERS to Claimant . Debtor claims standing to assert IRC § 860G(a)(3)(A)(i) and New York Estates, Powers & Trusts Law section 7-2.4 and alleges and alleges that the MERS to Claimant purported "assignment" was void, *ab initio,* pursuant to the expressed terms of the New York Estates,  Powers & Trusts Law section 7-2.4 and by the implied terms of the IRC § 860G(a)(3)(A)(i). In this case, because the startup date of the PSA Trust was June 6, 2006, September 5, 2006, was the latest possible date for deposit of qualified mortgages into the PSA Trust. The purported "Assignment" from MERS to Claimant, as the Master Servicer of the PSA

Trust, was signed on June 17, 2010, almost four (4) years beyond the three (3) month restrictions for transfers to the PSA Trust imposed by the New York Code and Internal Revenue Code.

With all the above in mind, Debtor alleges the following arguments to show that Claimant is not the holder, owner or beneficiary of the Note and Deed of Trust and lacks standing to foreclose whether by judicial or non-judicial process.

1/    First, the Claimant offers no evidence, *e.g.*, assignments or other indicia of legal transfer from the lender/Originator to the Sponsor/Aggregator, to the Depositor, to the Trustee.

2/    Second, assuming, *arguendo,* that it was legally possible to transfer and assign the Deed of Trust from MERS to Claimant, the June 17, 2010, purported "assignment" from MERS to Claimant would still be void, *ab initio,* for the reasons that the attempted transfer and assignment violated the time requirements of the Internal Revenue Code, the PSA Trust and thereby New York law.

In its Proof of Claim the Claimant does not allege that it claims standing by virtue of the "securitization" process. Instead, it seeks to establish its authority by way of an ineffective alleged MERS to Claimant "assignment". This attempted transfer is void, *ab initio,* and unless Claimant wishes to lose its tax exempt status provided by the provisions of IRC § 860, *et seq.* and destroy the REMIC in the process, it cannot claim by way of the suspect purported "assignment" that Claimant had assumed the status required by CC § 2924(a)(1).

Apparently, the Claimant avoids mention of the PSA Trust and the securitization process because it cannot produce true sale assignments and/or endorsements between the parties subject to the securitization process. *Barrionuevo v. Chase Bank, NA*, supra, 885 F. Supp. 2d 964.

It is apparent Claimant cannot allege its authority to foreclose outside the securitization process and still afford itself of the tax protection provided by the IRC. The Debtor cannot produce the contracts and assignments between the participating banks required by the securitization process. Instead, it now alleges that it obtained standing by virtue of the purported unlawful "Assignment" outside of the securitization process. Debtor is informed and believes that this attempted violation of law and regulation is subject to the sanction jurisdictions of the Internal Revenue Service and the Security Exchange Commission.

## VIII. CONCLUSION

In summary, even if lawfully legitimate, the Internal Revenue Code requirements for securitization will not allow for the purported "assignment" to be the conduit for the entrance of the Note and Deed of Trust into the PSA Trust.

It is beyond question that Claimant cannot show an unbroken chain of title in order to make its proof of claim. It cannot be presumed that Claimant has authority to make the proof of claim based on the Claimant's say-so just as it cannot be presumed that Debtor's actions are merely delaying tactics to avoid foreclosure. Widespread securitization of mortgages in the years before the financial meltdown of 2008, triggered at least in part by the often unlawful packaging, selling, repackaging, and reselling of mortgages mostly unseen and poorly understood by homeowners, has changed the financial perspectives and should change the legal perspectives, too.

The time has come to insist upon regularity in foreclosure proceedings. The time has come to make clear a homeowner's right to challenge a foreclosure based on the foreclosing party's absence of authority to foreclose. "[O]nly the `true owner' or `beneficial holder' of a Deed of Trust can bring to completion a nonjudicial foreclosure under California law." *Barrionuevo v. Chase Bank, N.A.*, supra, 885 F.Supp.2d at 972.

-25-

1    Claimant either has the authority to make this claim or it does not.  In its proof of claim,

2  it has not presented evidence herein to prove its authority, and it is a simple matter, it either has

3  the proof or it does not. The issue is whether the Court will uphold the integrity of the law or apply

4
   its equity powers or allow the claim notwithstanding the fact that no  legitimate evidence exists
5
6  to show that the Claimant is entitled to make the claim against Debtor's estate.[3]

7    The Proof of Claim filed  is deficient to show that Claimant is a party in interest with

8  authority to make the Proof of Claim. For this and the above reasons, the Debtor respectfully

9
   requests that the claim(s) of the Creditor be disallowed.
10
11    For this and the above reasons, .the Debtor respectfully requests that the claim(s) of

12  the Creditor be disallowed..  Debtor further requests that the Court order that no party without

13  Authority,  Due Process and  Standing to collect a debt, be allowed to pursue rights against this

14  property of the estate.

15    Dated : April 25, 2014.

16

17                                Respectfully submitted,

18                                _____
                                 J. Pedro Zarate
19                                Debtor In Pro Per

20

21

22

23

24

25

26  _____

27  [3] (2012) 41 Stetson L.Rev. 745

28                                -26-